STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Ronald Lee ELROD, Respondent.

SCBD No. 3426.
OBAD No. 799.

Supreme Court of Oklahoma.

July 5, 1989.

John E. Douglas, Asst. General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Ronald Lee Elrod, Oklahoma City, pro se.

HARGRAVE, Chief Justice.

This attorney disciplinary proceeding brought by the Oklahoma Bar Association originated when the respondent, Ronald Lee Elrod, contacted the office of the General Counsel of the Oklahoma Bar Association and informed them he had violated the disciplinary rules of the organization. The respondent was requested to submit a written statement, which he did. The letter so submitted and the information contained therein form the basis of the complaint now before the Court.

The report of the trial panel made a concise finding after hearing this matter, and it is:

The panel finds as a fact that the respondent received information from his client that a fraud was being perpetrated concerning a lawsuit for malpractice against another lawyer when in fact no grounds existed for such lawsuit. The panel further finds as a fact that Respondent did not reveal this information and did not promptly call upon his client to rectify the same and did not reveal the fraud to the person affected or to the Court before which the same was pending. In this connection, the panel further finds as a fact that after the person who was perpetrating the fraud was no longer the client of Respondent, the Respondent still failed to call the fraudulent conduct to the attention of the parties affected, or to the Court.

The Panel further finds as a fact that Respondent engaged in conduct while he was representing his client, when he knew and it was obvious that such conduct was merely to harass or maliciously injure another person.

The panel concluded that respondent had violated DR 7–102A(1), (2) and (3) and DR 7–102B(1) and (2) of the Code of Professional Responsibility, 5 O.S.1981, Ch. 1, App. 3. The trial panel unanimously recommended a ninety-day suspension and professional counseling for respondent.

The respondent's seventeen page letter to the Bar Association was referred to extensively in the hearing. It was, according to the respondent, more accurate than respondent's then-present recollection of the events that occurred out of which this proceeding emanated.[1] The following factual synopsis is disclosed by the letter:

Mr. Elrod was retained by Ronald L. Shepherd to represent him on a motion to modify the custody provisions of a divorce decree. The respondent, an Oklahoma County lawyer, faced insurmountable difficulty with a scheduling conflict when the Cleveland County District Court refused to continue a hearing on the basis his expert witness had prior out-of-town commitments without opposing counsel's agreement. Respondent as a result, was faced with simultaneous court appearances in two counties. Respondent withdrew the Cleveland County motion to modify as a result. The motion was refiled, the Cleveland County attorney then filed a motion to tax costs, and set that motion without extending the courtesy of consulting with respondent to avoid scheduling conflicts. The motion was then set for hearing on a date and time the respondent had a prior scheduled hearing in Oklahoma County. Faced again with the inflexible policy against continuances without opposing counsel's agreement, and after contacting the courthouse several times that morning, respondent telephoned to say he would be present at 11:30 and was informed the court had issued judgment for legal fees of $2,000 for the withdrawn motion to modify.

The child was subsequently removed from the jurisdiction without authority and respondent filed a motion to modify custody to his client, which was granted in part, but the respondent's client was still held liable for both parties' attorney fees. A subsequent journal entry gave respondent ninety days to pay the fees. The ninety days ran out on April 7, but prior to that, on February 13, the Norman attorney filed a contempt citation for failure to pay that amount not due until the seventh of April. Notice was mailed by regular mail to the respondent and by certified mail, not to the ex-husband/client but to the Norman attorney's client, the ex-wife. The respondent's client was arrested on a bench warrant before the date specified for payment in the journal entry. This happened immediately after the respondent made a flippant remark to the client stating it would be a shame if the client was arrested on the warrant.

Subsequently, the client filed a pro-se false arrest action against the Cleveland County attorney, with the knowledge of

---

1. The time sequences of these events is verified by exhibits, including court records from the

Cleveland County Courthouse.

the respondent. After this, the former client asked respondent about finding an attorney to represent him in the false arrest case. Respondent met an attorney at a social function thereafter, and after being informed the attorney handled malpractice actions, he told the attorney of the case and indicated that the client was looking for an attorney. Respondent admits he was quite inebriated at the time. The case proceeded to discovery and. the respondent was deposed. At this deposition hearing respondent did in fact deny that he received the summons by regular mail.

As the case neared trial, the respondent realized where his duty properly stood, and contacted the former client's attorney and furnished him with an affidavit which disclosed the truth of the matter. The affidavit enabled the attorney to withdraw from the case. At the same time the respondent made an appointment with the General Counsel of the Oklahoma Bar Association and disclosed the entire matter to the Bar Association. He was requested to remit a written statement on the matter, which he did.

Obviously the respondent's conduct violates the mandatory strictures of the Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, DR 7–102A(1), (2) and (3)[2] and 7–102B(1) and (2),[3] as determined by the trial panel. Aside from this obvious

conclusion, it is clear that the respondent rectified this egregious error before it became the basis of an erroneous judgment, and before a trial thereon commenced. Secondly, the respondent reported this substandard conduct to the Bar Association of his own volition, relieving his colleagues of the unpleasant duty of reporting such conduct themselves, as required by DR 1–103.[4] The record does not indicate that respondent had been told that such notification was imminent.

The complainant Bar Association takes the position before this Court that the ninety-day suspension is insufficient discipline to be imposed compared to the recent cases decided in this Court concerning fraud and misrepresentation. The Association urges here that the respondent be suspended for a year or more. In its first point, the complainant states that the Court should find that respondent furthered a fraud perpetrated by his client by falsely testifying in a sworn deposition. This point is well taken and is admitted by the respondent. Secondly, the Bar Association cites to this Court cases from the recent past in which discipline has been imposed for making material misrepresentations to a court for which a minimum of one year suspension was ordered. These cases are: *State of Oklahoma ex rel. Oklahoma Bar Association v. Peveto*, 620 P.2d 392 (Okl.1980), *State of Oklahoma ex rel. Oklahoma Bar*

2. **DR 7–102. Representing A Client Within the Bounds of the Law**

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

3. **DR 7–102. Representing A Client Within the Bounds of the Law**

(B) A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or

tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal.

(2) A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal.

4. **DR 1–103. Disclosure of Information to Authorities**

(A) A lawyer possessing unprivileged knowledge of a violation of DR 1–102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

(B) A lawyer possessing unprivileged knowledge or evidence concerning another lawyer or a judge shall reveal fully such knowledge or evidence upon proper request of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers or judges.

*Association v. Hensley,* 661 P.2d 527 (Okl. 1983), *State of Oklahoma ex rel. Oklahoma Bar Association v. Zahorsky,* 569 P.2d 437 (Okl.1977), *State of Oklahoma ex rel. Oklahoma Bar Association v. Scott William Katz,* 733 P.2d 406 (Okl.1987), and *State of Oklahoma ex rel. Oklahoma Bar Association v. Ed Moore,* 741 P.2d 445 (Okl.1987).

These cases are distinguishable from the matter before the Court on several points. First, in each cause the misrepresentation was before the court or in a sworn pleading and the respondent had completed the deception necessary to induce the court to act upon it. Moreover, the deception in those cases continued until uncovered by a third party. Disbarment was ordered in each case save *Peveto, supra,* where a one-year suspension was ordered.

In the case before the Court the respondent uttered a falsehood in response to a question in a deposition hearing, for use at trial. The distinguishing factor here is that prior to the time that act could ripen into an erroneous judgment, the respondent corrected it and did not allow the falsehood to come before a court in a trial. Additionally, it must be noted again that the respondent recanted his erroneous deposition testimony, both before it could be acted upon and in the absence of any person, fact, or circumstance which indicated the deception could not be successfully carried out. In addition to this, respondent reported himself to the responsible district attorney and the Bar.

The cases cited to the Court by the Bar Association are indicative of the fact that fraudulently uttering a falsehood in a sworn statement or in court is conduct which more often than not deserves the ultimate punishment of the professional death of the guilty individual. This is as it should be. Those factors last mentioned, the respondent's acts purging himself of the falsehood and reporting his own conduct, sufficiently differentiate the cause before the Court to result in discipline of a less severe nature. The primary consideration in determining discipline is the welfare of the public and the proper administration of justice. *State of Oklahoma ex rel. Oklahoma Bar Association v. Smith,* 615 P.2d 1014 (Okl.1980). The purpose of a disciplinary proceeding is not to punish a practitioner but to inquire into his continued fitness with a view of safeguarding the interest of the public, the courts and the legal profession. *State of Oklahoma ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d 262 (Okl.1982). Respondent's false testimony given in the deposition warrants severe sanction. His recanting of the falsehood before it could be acted upon in court and referring his actions to the Bar Association leads this Court to conclude that protection of the public and the administration of justice do not require disbarment. The trial panel recommended suspension for ninety days. Inasmuch as it appears the respondent did all that was possible in the way of renouncing his substandard conduct before it could be acted upon in a court of law, this Court concurs with the unanimous recommendation of the trial panel that respondent be suspended from the practice of law for ninety days from the date of this opinion and pay the costs of this proceeding in the amount of One Thousand, forty dollars and ninety-five cents ($1,040.95) immediately after this opinion becomes final.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR NINETY DAYS.

HODGES, SIMMS, DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in part, dissents in part. I would suspend the respondent for one year.

LAVENDER, J., not participating.